UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| DALLAS GOVER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 5:17-CV-272-REW |
| v. | ) | |
| | ) | |
| JUSTIN MURAVCHICK, et al., | ) | OPINION AND ORDER |
| | ) | |
| Defendants. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Lexington Police Department Officers Justin Muravchick and Brian Cobb,[1] in their individual capacities, moved for summary judgment. DE #24 (Motion). Dallas Gover opposed. DE #28 (Response). Defendants replied. DE #31 (Reply). For the following reasons, the Court fully **GRANTS** Defendants summary judgment. Qualified immunity shields each officer from every claim.

I.     **BACKGROUND**[2]

On the evening of June 23, 2016, Officers Muravchick and Cobb, of the LPD, conducted a traffic stop of Gover. DE #25-1 (Gover Depo.), at 21-22. Plaintiff thought the stop was "for an expired registration plate." DE #1, at ¶ 8; *see also* DE #25-1, at 22 ("Were you aware that your registration was improper? I was. Did you think that was the reason they were pulling you over? I did."). Muravchick confirmed this. DE #27-1 (Muravchick Depo.), at 19, 23. After Gover pulled over, Muravchick approached the

---

[1] Gover named "B. Cobb" in the Complaint. *See* DE #1. No party disputes that the proper officer is before the Court. Then-Officer Cobb is now a Detective. DE #26-1, at 8.

[2] Under the summary judgment standard, the Court assesses the facts in favor of Gover, the non-movant. *Matsushita Elec. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986).

driver's window; Cobb stayed behind the truck cab, at the pillar on the passenger side. DE #25-1, at 22-23; *see also* DE #26-1 (Cobb Depo.), at 18-19. After Gover showed Muravchick his license and insurance, Muravchick started back toward the police car, but "was stopped by Cobb." DE #25-1, at 24. The officers "had a conversation that [Gover] couldn't hear." *Id.* Cobb stated that, in this conversation, he "advised" Muravchick "to pull Mr. Gover out of the vehicle." DE #26-1, at 23. Muravchick said that Cobb "alert[ed]" him that he (Cobb) thought Gover was "destroying something" and "smashing a substance on the floorboard." DE #27-1, at 36-37. Gover denies using his "foot to attempt to grind anything into the floorboard or mat[.]" DE #28-7 (Gover Affidavit), at ¶ 5.

Following this conversation, according to Gover, Muravchick "turned back around, approached the driver's door, and he asked if it would be okay for them to search my vehicle." DE #25-1, at 25. Gover did not give consent—he "asked what for"—and the situation began to escalate. *Id.* Gover eventually exited the vehicle, and Cobb "asked what did you do with the cocaine[?]" *Id.* at 25-26. Plaintiff "had no idea what he was talking about." *Id.* at 26. While the driver's door was open, Cobb viewed material on the driver's floorboard that he, utilizing his training and experience, suspected to be crack cocaine. DE #26-1, at 25-27.

Muravchick kept Gover "up against the backside of my tail bed," and Cobb began searching the vehicle, lifting the driver's side floor mat. DE #25-1, at 26. Muravchick patted Gover down and "led [him] to a curb directly behind [his] truck for [him] to sit down." *Id.* at 27. Cobb, according to Gover, kept "searching" his truck—specifically the "the driver's side, the floorboard." *Id.* During this process, Gover learned the allegation

that "Cobb had seen me throw cocaine in the floor and stomp on it." *Id.* at 28; *see also* DE #26-1, at 20 (Cobb agreeing that he saw "Gover grinding his heel into the carpet on the floorboard"). Gover could not recall, in deposition, if he had been moving his knee, DE #25-1, at 28, and he later swore (as the Court already partially recounted) that he "never used my foot to attempt to grind anything into the floorboard or mat on my floorboard during any point on the night of my arrest" and that he "never made any movements with my foot that would be interpreted to be grinding anything into the floorboard of my truck." DE #28-7, at ¶¶ 5-6.

Gover eventually learned that Cobb "scraped" material from the floorboard and field-tested it. DE #25-1, at 29-30. Gover "knew" this material actually was "doughnut icing" from doughnuts he purchased "two Sundays prior to the incident" from "Kroger bakery," not cocaine. *Id.* at 30. Cobb described seeing two different substances in two different locations in the floorboard: "There was a little crushed up white rock and powder right where Mr. Gover's heel was, back away from the gas pedal towards the seat, and then there was also another white substance, powdery, on the floor closer to the gas pedal." DE #26-1, at 25-26. Despite Gover's confidence that the material was doughnut icing, one field test came back positive for cocaine. DE #25-1, at 32. Another field test, though, was negative for controlled substances. DE #26-1, at 29-30.

After the positive field test, according to Plaintiff, "they continued to search my truck," while Gover remained on the curb, not yet under arrest. DE #25-1, at 32-33. "They" continued to search "for an extended period of time." *Id.* at 33. Muravchick confirmed that he searched the truck "after [Gover] was under arrest or at some point

during the arrest[.]" DE #27-1, at 32-34. After the search(es) concluded, Muravchick arrested Gover. DE #25-1, at 33.

Based on these occurrences, Kentucky levied several criminal charges against Gover, to wit, no/expired registration plate, tampering with physical evidence, and possession of controlled substance (cocaine) 1st offense. *See* DE #24-4, at 1. Gover posted bond and was released the next day, June 24, 2016. *See id.* at 1-2; DE #25-1, at 42 (Gover confirming he was "in custody for 22 hours").

The Commonwealth eventually dismissed all charges without prejudice,[3] and Gover later initiated this suit, asserting four claims under 42 U.S.C. § 1983[4] and the United States Constitution: (1) unconstitutional arrest and imprisonment, (2) unconstitutional pretrial detention, (3) malicious prosecution, and (4) unconstitutional search. The parties have litigated the case, and Defendants' summary judgment motion is fully briefed and ripe for consideration.

## II.     STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A reviewing court must construe the evidence and draw all

---

[3] *See* DE ##24-4, at 3 (Minutes); 24-5 (State Docket). This undoubtedly was due, in part, to the suspected crack cocaine coming back from the lab as negative for controlled substances. As Judge Goodman quipped, the Commonwealth found itself prosecuting the (rather untenable) charge of "possession of Dunkin' Donuts." *See* DE #30 (Conventional Filing), File named "8. dallas gover 8.12.16 pt 1 DG 98," at 0:53-0:59. As to the expired registration, Gover admitted having "cured" that problem by the time of the hearing. *See id.*, File named "8. dallas gover 8.12.16 pt 2 DG 99," at 1:26-1:37.

[4] Section 1983 generally provides a federal cause of action against state officials for the deprivation of federal constitutional rights under color of state law. The Fourth Amendment, which provides, in relevant part, that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated," undergirds the federal constitutional rights at issue here.

reasonable inferences from the underlying facts in favor of the nonmoving party. *Matsushita Elec.*, 106 S. Ct. at 1356; *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). Additionally, the court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

The burden of establishing the absence of a genuine dispute of material fact initially rests with the moving party. *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986) (requiring the moving party to set forth "the basis for its motion, and identify[] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate an absence of a genuine issue of material fact"); *Lindsay*, 578 F.3d at 414 ("The party moving for summary judgment bears the initial burden of showing that there is no material issue in dispute."). If the moving party meets its burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *Celotex Corp.*, 106 S. Ct. at 2253; *Bass v. Robinson*, 167 F.3d 1041, 1044 (6th Cir. 1999). However, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 106 S. Ct. at 2552; *see also id.* at 2557 (Brennan, J., dissenting) ("If the burden of persuasion at trial would be on the *non-moving* party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the Court that the nonmoving party's

evidence is insufficient to establish an essential element of the nonmoving party's claim." (emphasis in original)).

A fact is "material" if the underlying substantive law identifies the fact as critical. *Anderson*, 106 S. Ct. at 2510. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A "genuine" issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 2511; *Matsushita Elec.*, 106 S. Ct. at 1356 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (citation omitted). Such evidence must be suitable for admission into evidence at trial. *Salt Lick Bancorp v. FDIC*, 187 F. App'x 428, 444-45 (6th Cir. 2006).

## III. ANALYSIS

Defendants primarily argue that qualified immunity protects them from Gover's claims. *See* DE #24, at 7-16. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 102 S. Ct. 2727, 2738 (1982); *see also, e.g.*, *Robertson v. Lucas*, 753 F.3d 606, 610 (6th Cir. 2014) (affirming grant of qualified immunity to state and federal law enforcement officers); *Barnes v. Wright*, 449 F.3d 709, 711 (6th Cir. 2006) (reversing the denial of qualified immunity to law enforcement officers in a § 1983 suit).

"Since the defendant officers have raised the qualified immunity defense, plaintiff bears the burden of showing that defendants are not entitled to qualified immunity." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015). In the summary judgment context, the Court "view[s] all evidence, and draw[s] all reasonable inferences, in the light most favorable to the nonmoving party," Gover. *Kent v. Oakland Cnty.*, 810 F.3d 384, 390 (6th Cir. 2016) (internal alteration removed).

To evaluate the qualified immunity question, courts engage in a two-part inquiry: "First, taken in the light most favorable to the party asserting the injury, do the facts alleged show that the [official]'s conduct violated a constitutional right? Second, is the right clearly established?" *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006); *see also Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009) (holding that courts may address the two questions in either order). The right must be "so clearly established in a particularized sense that a reasonable officer confronted with the same situation would have known that his conduct violated that right." *Moseley*, 790 F.3d at 653. The Court must avoid "a high level of generality" in assessing the clarity of the right or misconduct. *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) ("The dispositive question is whether the violative nature of *particular* conduct is clearly established. . . . This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." (internal quotation marks omitted) (citing *Brosseau v. Haugen*, 125 S. Ct. 596 (2004))). "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful. In other words, existing law must have placed the constitutionality of the officer's conduct beyond debate. This demanding standard protects all but the plainly

incompetent or those who knowingly violate the law." *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (internal quotation marks and citations removed).

Gover tells the Court that all the claims in this case "are predicated on a violation of the Fourth Amendment." DE #28, at 8. The Court evaluates each Count in turn.

*Wrongful Arrest*—"An arresting agent is entitled to qualified immunity if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent." *Kennedy v. City of Villa Hills*, 635 F.3d 210, 214 (6th Cir. 2011) (internal quotation marks and alteration removed). "Thus, even if a factual dispute exists about the objective reasonableness of the officer's actions, a court should grant the officer qualified immunity if, viewing the facts favorably to the plaintiff, an officer reasonably could have believed that the arrest was lawful." *Id.* The Circuit has elaborated:

> In order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause. *Painter v. Robertson*, 185 F.3d 557, 569 (6th Cir. 1999). A police officer has probable cause if there is a "'fair probability'" that the individual to be arrested has either committed or intends to commit a crime. *Northrop v. Trippett*, 265 F.3d 372, 379 (6th Cir. 2001) (quoting *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989)), *cert. denied*, 535 U.S. 955, 122 S. Ct. 1358, 152 L. Ed. 2d 354 (2002). A police officer determines the existence of probable cause by examining the facts and circumstances within his knowledge that are sufficient to inform "a prudent person, or one of reasonable caution," that the suspect "has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979).

*Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002). The probable cause determination generally requires a common sense, totality of the circumstances assessment of the basis for a seizure or search. *See, e.g., United States v. Torres-Ramos*, 536 F.3d 542, 554-55 (6th Cir. 2008). The standard requires "more than mere suspicion" but not "evidence to

establish a prima facie case . . . much less evidence sufficient to establish guilt beyond a reasonable doubt." *United States v. Strickland*, 144 F.3d 412, 416 (6th Cir. 1998). Importantly, the probable cause standard is objective. "Subjective intentions play no role in probable cause Fourth Amendment analysis." *Schneider v. Franklin Cnty.*, 288 F. App'x 247, 251 (6th Cir. 2008) (citing *Whren v. United States*, 116 S. Ct. 1769, 1773-74 (1996)). The Court eschews hyper-technicality and commonsensically probes and considers the evidence.

A key issue is, thus, whether Defendants had probable cause to suspect Gover of criminality. Viewing the facts in the light most favorable to Plaintiff, Defendants had—and reasonably could have believed that they had—probable cause to arrest Gover based on, at a minimum, the expired registration plate.[5]

"Before the owner of a motor vehicle . . . may operate it or permit its operation upon a highway, the owner shall apply for registration[.]" KRS 186.020(1). This registration, though, ultimately "expir[es] . . . as provided by KRS 186A.035[.]" *See* KRS 186.020(5). A different subsection—KRS 186.170(1)—particularly regulates vehicle

---

[5] The expired tag violation alone suffices to resolve Counts 1-3, as subsequent analysis makes clear. Accordingly, the Court declines to additionally analyze Counts 1-3 with respect to the other charged crimes. "The existence of probable cause of a related offense will excuse a lack of probable cause for other offenses charged[.] . . . Simply put, if probable cause existed to arrest [Plaintiff] for *any* offense, [the officers] will be entitled to qualified immunity." *Smith v. Peyman*, 93 F. Supp. 3d 738, 745 (E.D. Ky. 2015) (emphasis in original) (citing *Devenpeck v. Alford*, 125 S. Ct. 588, 594 (2004)). The Supreme Court has consistently eschewed making "the lawfulness of an arrest turn upon the motivation of the arresting officer," *Devenpeck*, 125 S. Ct. at 594, a principle the Court here validates. "[T]he subjective intent of the arresting officer" simply is "not relevant to the probable cause inquiry." *Hoover v. Walsh*, 682 F.3d 481, 499-500 & n.52 (6th Cir. 2012) (affirming validity of arrest for driver's license-related offense, although Hoover "contend[ed] that the officers never intended to arrest him—or even cite him—for the violation"). That said, the Court's subsequent drug-related probable cause determination surely also supports an immunity finding as to Counts 1-3.

registration plates, outlawing, *inter alia*, any person "operat[ing] a motor vehicle unless the insignia [of current registration] is affixed upon it." Kentucky, per this statutory amalgamation, thus criminalizes, in common parlance, "operating a motor vehicle with no / expired registration plates[.]" *See, e.g.*, *Piercy v. Commonwealth*, 303 S.W.3d 492, 496-97 (Ky. Ct. App. 2010) ("In the instant case, it appears that Piercy was illegally driving a vehicle with expired tags, or at the very least, that he was about to drive a vehicle with expired tags, and was thus about to commit a crime." (treating KRS 186.170 as the definitional statute)); *Bennett v. Commonwealth*, No. 2009-CA-349-MR, 2010 WL 3604096, at *2-4 (Ky. Ct. App. Sept. 17, 2010) (affirming such a conviction).

This criminal offense, under Kentucky law, is "a violation." KRS 186.990(1). A "violation" in the Commonwealth is "an offense, other than a traffic infraction, for which a sentence to a fine only can be imposed." KRS 500.080(17); *see also* KRS 431.060(3) ("Offenses punishable by a fine only or by any other penalty not cited herein, whether in combination with a fine or not, are violations."). An "offense," in turn, and in relevant part, is "conduct for which a sentence to a term of imprisonment or to a fine is provided by any law of this state[.]" KRS 500.080(11). "Pursuant to Kentucky statute, an officer may not arrest for a mere violation." *United States v. Sullivan*, No. 3:09-CR-28, 2010 WL 1688784, at *4 n.2 (W.D. Ky. Apr. 26, 2010); *see generally* KRS 431.005. The Kentucky Court of Appeals has explicitly labeled operating a motor vehicle with an expired registration plate criminal conduct—"a crime." *Piercy*, 303 S.W.3d at 496-97.[6]

While Kentucky chooses to preclude arrests for alleged "violations," that policy decision does not define or modify what the Fourth Amendment permits. *See Pyles v.*

---

[6] The Court thus rejects Gover's argument that "a violation is an offense but is not a criminal offense." DE #28, at 13. A violation, under Kentucky law, is criminal conduct.

*Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) ("Plainly, Raisor cannot be liable under § 1983 unless he violated one of Pyles' federal constitutional rights. Pyles' rights under Kentucky law, including her right as an alleged misdemeanant to be arrested only when the misdemeanor is committed in the presence of the arresting officer, are not grounded in the federal Constitution and will not support a § 1983 claim."). "While the states are, of course, free to enact laws that are more protective of individual rights than the United States Constitution, a mere violation of such a state law will not establish a proper claim under § 1983." *Id.* at 1215-16 ("In sum, Raisor's alleged violation of Kentucky law is not actionable under § 1983.").

The Fourth Amendment, in contrast to Kentucky law, permits arrest "for even a very minor offense." *Sullivan*, 2010 WL 1688784, at *4. Plainly stated: "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 121 S. Ct. 1536, 1557 (2001); *see also, e.g.*, *Vidal v. Lexington Fayette Urban Cnty. Gov't*, No. 5:13-117-DCR, 2014 WL 4418113, at *5 (E.D. Ky. Sept. 8, 2014) (concluding that the Fourth Amendment permits arrest for violation of a noise ordinance). The Fourth Amendment, quite simply, does not "forbid[] a warrantless arrest for a minor criminal offense," even those "punishable only by a fine," such as the Kentucky violation at issue here. *See Atwater*, 121 S. Ct. at 1541; *accord Virginia v. Moore*, 128 S. Ct. 1598, 1607 (2008) ("We conclude that warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and that while States are free to regulate such arrests however they desire, state restrictions do not alter the Fourth Amendment's protections."); *Reid v. Henry*

*Cnty., Ga.*, 568 F. App'x 745, 748–49 (11th Cir. 2014) ("The existence of a traffic violation can provide an officer with arguable probable cause to make an arrest, even though the offense is minor or normally punishable by a monetary citation, and even if the officer had no knowledge of that violation at the time. . . . As long as probable cause existed to arrest the suspect for any offense, the arrest and detention are valid even if probable cause was lacking as to some offenses, or even all announced charges.") (citing *Atwater*, with other citations omitted).

Applying these principles makes resolving Gover's wrongful arrest claim easy, considering the expired registration plate charge alone. Whether Defendants acted validly under Kentucky law (again, considering that one charge, in isolation), they undoubtedly had probable cause to believe Gover had committed the registration-related violation, as Plaintiff himself admitted. DE ##27-1, at 19-23 (Muravchick confirming that LINK/NCIC, available through his cruiser computer system (the "MDC, mobile data computer," utilizing a program called "Aegis"), reported Gover's "registration [a]s expired" and gave "a hit"—*i.e.*, it provided "the vehicle registration [and] the vehicle owner's information");[7] 25-1, at 22-24 (Gover admitting that his "registration was improper" and that his "tags were expired"); 30 (Conventional Filing), File named "8. dallas gover 8.12.16 pt 2 DG 99," at 0:57-1:05 (Gover, through counsel, stipulating: "We're stipulating to the probable cause that they had a right to pull him over, Your Honor."); *id.* at 1:43-1:51 ("You are stipulating to probable cause? Probable cause to

---

[7] Gover does not argue that this reporting system was unreliable or otherwise not a dependable vehicle registration status indicator.

being pulled over, yes, ma'am.");[8] *see also, e.g.*, *United States v. Smith*, 148 F. App'x 615, 616-17 (9th Cir. 2005) (holding that officers' probable cause for "expired registration tags" under California law was "sufficient . . . to arrest Smith for the registration violation"); *Belcher-Bey v. City of Las Vegas*, Nos. 2:12-cv-1829-JAD-CWH, 2:12-cv-1909-JAD-CWH, 2015 WL 1344790, at *4 (D. Nev. Mar. 20, 2015) ("[E]xpired . . . vehicle registration can give rise to probable cause for arrest during traffic stops."). Armed with probable cause of a criminal offense—however minor—Defendants[9] validly (under the Fourth Amendment) arrested Gover. Muravchick and Cobb have qualified immunity on this Count.

     *Unconstitutional Pretrial Detention*—The prior conclusion also resolves Gover's unconstitutional detention claim. "[D]etention without probable cause is an actionable Fourth Amendment injury under § 1983." *Gregory v. City of Louisville*, 444 F.3d 725, 749 (6th Cir. 2006). As recounted above, Defendants had probable cause to believe that Gover had committed a criminal offense (the expired registration plate violation), thus permitting (again, under the Fourth Amendment) his arrest and detention. As the Court previously mentioned, Gover was detained less than a day. *See* DE #25-1, at 42. Probable cause defeats this claim, and Muravchick and Cobb had it.

---

[8] The Court notes, without explicitly relying on, the idea, rooted in the equitable doctrine of judicial estoppel, that a "stipulation of probable cause in an underlying criminal proceeding bars subsequent claims for unlawful search, false arrest, false imprisonment, and malicious prosecution." *Shemwell v. Heller*, No. 3:10-cv-336-CRS, 2012 WL 1038114, at *3 (W.D. Ky. Mar. 27, 2012) (collecting cases); *see also, e.g.*, *Grise v. Allen*, 714 F. App'x 489, 495-96 (6th Cir. 2017). Gover stipulated only to probable cause for the traffic stop, not the other events of the evening at issue.

[9] Given the clarity with which Counts 1-3 fail as a matter of law, the Court need not give granular consideration to each Defendant's separate actions, as to those Counts.

*Malicious Prosecution*—"To succeed on a malicious-prosecution claim under §

1983 when the claim is premised on a violation of the Fourth Amendment, a plaintiff

must prove the following: First, the plaintiff must show that a criminal prosecution was

initiated against the plaintiff and that the defendant made, influenced, or participated in

the decision to prosecute. Second, because a § 1983 claim is premised on the violation of

a constitutional right, the plaintiff must show that there was a lack of probable cause for

the criminal prosecution. Third, the plaintiff must show that, as a consequence of a legal

proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth

Amendment jurisprudence, apart from the initial seizure. Fourth, the criminal proceeding

must have been resolved in the plaintiff's favor." *Sykes v. Anderson*, 625 F.3d 294, 308-

09 (6th Cir. 2010) (internal quotation marks, citations, and footnote removed).

For essentially the same reasons discussed, this claim fails on, at a minimum,

prong two. Gover does not "show that there was a lack of probable cause for the criminal

prosecution." *Id.* To the contrary, for all the reasons previously discussed, there was

probable cause (at a minimum) to believe he committed the registration violation.[10] The

---

[10] Given the clarity of this result, the Court declines to extensively analyze Defendants'
prong four argument. *See* DE #24, at 16-19. That said, prong four plainly appears to pose
an additional hurdle to success for Plaintiff; a dismissal without prejudice does not mean
that "the criminal proceeding [was] resolved in the plaintiff's favor." *See Craft v.
Billingslea*, No. 17-cv-12752, 2017 WL 6039559, at *5 (E.D. Mich. Dec. 6, 2017) ("Craft
cites no Sixth Circuit decision—and the Court has not identified one—that establishes a
dismissal without prejudice constitutes a favorable termination. Conversely, Defendants'
argument that a dismissal without prejudice is not a favorable termination finds ample
support from persuasive authorities. In *Mobley v. City of Detroit*, for instance, a court . . .
dismissed plaintiffs' malicious prosecution claims under Section 1983 because the
charges against plaintiffs were dismissed voluntarily. 938 F. Supp. 2d 669, 687 (E.D.
Mich. 2012). Likewise, charges dropped after a hung jury (in favor of acquittal) did not
constitute a favorable termination, and thus, a court dismissed a plaintiff's malicious
prosecution claim. *Thornton v. City of Columbus*, 171 F. Supp. 3d 702, 710 (S.D. Ohio
2016) (citing *Singleton v. City of New York*, 632 F.2d 185, 193 (2d Cir. 1980)

state court dismissed all charges simultaneously. *See* DE #30, File named "8. dallas gover 8.12.16 pt 2 DG 99." Gover's malicious prosecution claim thus is baseless, and Defendants are immune from it.

*Unconstitutional Search*—An unconstitutional search can validly undergird a § 1983 claim. *See, e.g.*, *Smith v. Thornburg*, 136 F.3d 1070, 1074-76 (6th Cir. 1998); *Thomas v. Plummer*, 489 F. App'x 116, 120 & n.5 (6th Cir. 2012) (countenancing a "Fourth Amendment illegal-search claim"); *Pullin v. City of Canton*, 133 F. Supp. 2d 1045, 1053 & n.7 (N.D. Ohio 2001). "To maintain" such a claim, Gover "must show: (1) that [the] search did, indeed, violate the Fourth Amendment; and (2) that, as of [the date of the search], th[e] violation was so clear that any reasonable officer would have understood that []he should not have done what [the officer(s)] did." *Thomas*, 489 F. App'x at 120. Even if, though, a search was, in fact, invalid under the Fourth Amendment, qualified immunity protects "officers' reasonable mistake[s] of fact." *Smith*, 136 F.3d at 1076; *see also id.* at 1091 (Clay, J., dissenting) (reasoning that the question becomes, assuming Plaintiff establishes "for purposes of summary judgment, that the search was conducted without probable cause, . . . whether Defendants reasonably could have thought they possessed probable cause to search Plaintiff's vehicle").[11]

---

(concluding that 'proceedings are terminated in favor of the accused only when their final disposition is such as to indicate the accused is not guilty.'))." (internal quotation marks and alteration removed)).

[11] At least as a general matter, the law was clearly established on June 23, 2016, that law enforcement must have probable cause to conduct a warrantless search of a vehicle. *See, e.g.*, *United States v. Wright*, 16 F.3d 1429, 1437 (6th Cir. 1994). The Court, though, must avoid generality, and Gover does not "identif[y] a single precedent—much less a controlling case or robust consensus of cases—finding a Fourth Amendment violation under similar [factual] circumstances." *Wesby*, 138 S. Ct. at 591; *see also* DE ##28, at 15 (Gover so failing); 31, at 3 (criticizing Plaintiff for this default).

Unlike the first three Counts, this claim requires a broader examination of the litigants' interactions on June 23, 2016. Probable cause of a plate violation, alone, may not have justified a warrantless search of the vehicle.[12] *Cf., e.g.*, *United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998) ("[L]aw enforcement officers may search a readily mobile vehicle without a warrant if they have probable cause to believe that the vehicle *contains* evidence of a crime." (emphasis added)); *Thomas*, 489 F. App'x at 120 (similar holding for crime of "obstructing official business"). For the following reasons, however, the Court concludes, assessing the facts in the light most favorable to Gover, that the officers validly had probable cause to search and, at a minimum, that "a reasonable officer could conclude that there was probable cause" to search, at the relevant times. *See Wesby*, 138 S. Ct. at 588.

The first issue is the search[13] of Gover's truck, which occurred only after Cobb viewed substances he perceived as suspicious in the driver's floorboard.[14] As the Court described above, the initial traffic stop was valid. Officer Muravchick was, thus, justified in ordering Gover out of the vehicle. *Pennsylvania v. Mimms*, 98 S. Ct. 330, 333 n.6 (1977) ("[O]nce a motor vehicle has been lawfully detained for a traffic violation, the

---

[12] The defense does not argue that, anyway. Proof of registration, required to be in the vehicle, *see* KRS 186.170(1), might qualify as evidence of the expired plate crime. The Court does not make that finding though.

[13] The Court's discussion of the search(es) at issue applies to all officers in play. At times, Gover used "they" in deposition, and Defendants' testimony revealed certain ambiguities about which officer(s) were involved in each search. The Court, out of an abundance of caution, evaluates the at-issue conduct with regard to both named Defendants. The Court also notes, without exploring in detail, application of the collective knowledge doctrine. *See, e.g.*, *United States v. Duval*, 742 F.3d 246, 253-54 (6th Cir. 2014); *United States v. Lyons*, 687 F.3d 754, 765-66 (6th Cir. 2012).

[14] Gover's argument that "at the time that the search was conducted, they [the officers] had seen not even seen [sic] the doughnut icing," DE #28, at 11, blatantly misrepresents the record. Tellingly, Plaintiff provided no citation for this (unsupported) proposition. Indeed, his recitation of facts acknowledges the actual state of the record. *Id.* at 5.

police officers may order the driver to get out of the vehicle without violating the Fourth Amendment[.]"). While the driver's door was validly open, on Gover's exit, Cobb saw, in plain view,[15] substances he perceived, utilizing his training and experience, to be crack cocaine. DE #26-1, at 25. "The fact that the officer used a flashlight is immaterial." *United States v. Weatherspoon*, 82 F.3d 697, 699 (6th Cir. 1996); *see also Texas v. Brown*, 103 S. Ct. 1535, 1542 (1983) (plurality opinion) ("It is likewise beyond dispute that Maples' action in shining his flashlight to illuminate the interior of Brown's car trenched upon no right secured . . . by the Fourth Amendment. . . . Numerous other courts have agreed that the use of artificial means to illuminate a darkened area simply does not constitute a search, and thus triggers no Fourth Amendment protection.").

The question is, thus, whether viewing the floorboard substances[16] gave law enforcement probable cause to search the truck, or, more accurately, in the qualified immunity context, whether law enforcement reasonably could have thought there was probable cause to search the truck. The Court answers affirmatively—that Cobb viewing substances in the floorboard of the driver's seat of Gover's truck that he (Cobb) viewed as consistent with material that his training and experience told him was crack cocaine

---

[15] The parties make no argument as to the plain view doctrine, but the Court perceives (without the aid of adversarial briefing) the factors satisfied in this scenario. *See United States v. Garcia*, 496 F.3d 495, 508 (6th Cir. 2007); *United States v. McLevain*, 310 F.3d 434, 439 (6th Cir. 2002).

[16] The Court evaluates probable cause in this context considering *only* Cobb's plain view of the substances. Gover does not contest the fact that Cobb viewed substances in the driver's floorboard. *See* DE ##25-1, at 29-30 (Gover stating that he "knew" there was material "in the floor"); 27-1, at 41 (Muravchick confirming that he and Cobb "looked at the field substance from standing outside the car that was located on the floor mat of the driver's side floor" and that Cobb showed him "where he thought that the suspected crack was"). The Court does not consider, in this analysis, the officers' alleged observations of Gover's behavior and physical movements, many of which Plaintiff *does* expressly contest.

provided probable cause to search the truck. *See, e.g.*, *Arizona v. Gant*, 129 S. Ct. 1710, 1721 (2009) ("If there is probable cause to believe a vehicle contains evidence of criminal activity, *United States v. Ross* . . . authorizes a search of any area of the vehicle in which the evidence might be found.");[17] *McLevain*, 310 F.3d at 441 (stating that the "intrinsic nature" of cocaine "gives probable cause to believe it is contraband"); *United States v. Nixon*, 396 F. App'x 1, 2-3 (4th Cir. 2010); *United States v. Whitney*, 350 F. App'x 627, 630 (3d Cir. 2009) (perceiving no constitutional violation regarding warrantless seizure of suspected cocaine viewed "on the floor of Whitney's car using a flashlight"); *United States v. Rhodes*, 265 F. App'x 382, 382-83 (5th Cir. 2008) (per curiam) (holding that officer's plain view of "a clear plastic bag containing smaller bags of cocaine base . . . on the floor of [defendant's] car" provided probable cause to search vehicle because the officer's "training and experience" gave him a reasonable belief, although he was "not certain," that the bags contained crack); *Brown v. United States*, 219 F. App'x 917, 919 (11th Cir. 2007) (per curiam) (holding that officer's plain view of material he "visually identified as" drugs provided probable cause to search vehicle); *United States v. Turner*, 47 F.3d 1172, No. 94-5080, 1995 WL 63156, at *2 (6th Cir. Feb. 14, 1995) (table); *United States v. Tobin*, 923 F.2d 1506, 1512 (11th Cir. 1991) ("There is no doubt that the agent's suspicions rose to the level of probable cause when, as the door

---

[17] *See also, e.g.*, *United States v. Crotinger*, 928 F.2d 203, 205 (6th Cir. 1991) ("If probable cause justifies a search of a vehicle . . ., then that probable cause extends to justify the search of every part of the vehicle and all containers found therein in which contraband could be hidden.").

stood open, he detected what he knew from his law enforcement experience to be the odor of marijuana.").[18]

Cobb's multiple years of training and experience told him the substances he saw were consistent with cocaine. Specifically, Cobb saw "a little crushed up white rock and powder right where Mr. Gover's heel was, back away from the gas pedal towards the seat," as well as "another white substance, powdery, on the floor closer to the gas pedal." DE #26-1, at 25-26. Cobb emphasized that he saw "little rocks," like "clumps of the suspected substance." *Id.* at 26. "[I]t was a white rock-like substance . . . with some powder residue around it[.]" *Id.* "[B]ased on my experience and training," Cobb thought "it was crack cocaine." *Id.* This was due to "the rock," the "off-white color of the substance," and "the texture." *Id.* at 27. Muravchick (already through two academies and with years in the field) corroborated this description and the opinion, DE #27-1, at 42 ("It was a white rock-like substance with powder residue around the rock-like substance."), agreeing that the material, applying his own training and experience, "resembled what I have seen in the past as crack cocaine." *Id.*[19] Cobb reported specific training "to see narcotics and know what they look like." DE #26-1, at 26. Police, simply put, "need not ignore the insights gleaned from their experience on the beat." *United States v. Grogins*, 163 F.3d 795, 798 (4th Cir. 1998). Officers may "draw on their own experience and

---

[18] *Cf., e.g.*, *United States v. Winters*, 782 F.3d 289, 304 (6th Cir. 2015) (holding that an "alert by a properly trained and reliable drug-detection dog is sufficient to establish probable cause for the presence of a controlled substance"); *United States v. Sharp*, 689 F.3d 616, 618-19 (6th Cir. 2012) (same). Surely if a dog smelling a suspected controlled substance is probable cause to search, an officer visually identifying the same is a like basis for belief.

[19] Indeed, the Sixth Circuit recognizes that police can reasonably view "brownish white rock-like substance[s]" as "crack cocaine." *United States v. Thomas*, 138 F. App'x 759, 762 (6th Cir. 2005).

specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United States v. Arvizu*, 122 S. Ct. 744, 750-51 (2002) (internal quotation marks removed). Cobb (along with Muravchick) validly did so here, and the Court credits his observations of suspicious material, and his application of training and experience regarding controlled substances, as establishing a reasonable basis to believe that probable cause to search existed. The Court also notes that both officers stated that an unpackaged crack rock, as appeared in the floorboard, would not be unusual. *See* DE ##26-1, at 23 (Cobb noting nature of crack, that people hide it in their mouths, and that "a lot of times there is no packaging with crack cocaine"); 27-1, at 40 (Muravchick noting, as to absence of baggie, "[Y]ou can contain crack cocaine in anything").

Officers continued to search Plaintiff's truck *after* conducting two cocaine field tests—one of which returned a positive hit, and one of which came back negative.[20] Did

---

[20] The Court rejects Plaintiff's argument (only made in briefing) that a "jury could believe that there was [only] one field test, [which] came back negative[.]" DE #28, at 9. The undisputed record shows that the officers conducted two field tests, even if they (erroneously), at the time, documented but one (the positive one). Gover himself said, in the Complaint, that there were "two field tests." DE #1, at ¶ 11; *see also* DE #28, at 5 (Gover acknowledging that "Cobb performed two separate presumptive field tests for crack cocaine"). According to Plaintiff, "[o]ne field test came back positive for cocaine[;] the other came back negative." DE #1, at ¶ 12. There is no proof that, if, in fact, the officers only conducted one field test, it produced a negative result. The record undeniably shows a minimum of one positive test. *See, e.g.*, DE ##25-1, at 32; 26-1, at 29-30, 37-38, 42; 27-1, at 45-47, 59-60, 64, 69-70; 28-9, at 6 (Answer to I-17).

The Court, thus, also rejects the argument that a jury could believe that both field tests "turned up negative[.]" *Id.* at 10. The case proof does not support—indeed flatly forecloses—such rank speculation. *See, e.g.*, *Gillham v. Tenn. Valley Auth.*, 488 F. App'x 80, 85-86 (6th Cir. 2012) ("To survive summary judgment . . . [a] party may not rest on speculation or a 'mere possibility' of a factual dispute."); *Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1146-47 (7th Cir. 1994) (explaining that a party "cannot avoid summary judgment merely by asserting that [witnesses] are lying"); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584 (6th Cir. 1992) ("It is now quite well-established that, in order to withstand a motion

these circumstances (one positive, and one negative, field test) vitiate the extant probable cause? No.

Clearly, a positive field test alone would only bolster officers' preexisting probable cause. *See, e.g.*, *Green v. Webster*, 359 F. App'x 249, 251 (2d Cir. 2010) ("A reasonably trustworthy field test that returns a 'positive' result for the presence of cocaine is a sufficient basis for probable cause.");[21] *United States v. Uricoechea–Casallas*, 946 F.2d 162, 166 (1st Cir. 1991) (holding that officers "clearly had probable cause" when a "field test of the white powder . . . indicated the presence of cocaine"); *Molina ex rel. Molina v. Cooper*, 325 F.3d 963, 971 (7th Cir. 2003); *United States v. Crespo*, 868 F. Supp. 79, 85 (M.D. Pa. 1994) ("[T]he field test taken at the scene proved positive for cocaine. This, in and of itself, constitutes probable cause to arrest.").[22]

The co-existence of a negative field test neither alters this result nor meaningfully calls into question the enduring probable cause, in this scenario. Factually, here, the negative field test was easily explainable. Remember, the officers described two distinct

for summary judgment, the party opposing the motion must present 'affirmative evidence' to support his/her position[.]"). "The mere fact that the laboratory test returned a contrary result does not raise an inference that [the officers] w[ere] lying when [they] said [the] test[] came out positive[.] . . . [Gover]'s allegations amount to speculation, and mere speculation will not overcome a motion for summary judgment." *Lamping v. Walraven*, 30 F. App'x 577, 580 (6th Cir. 2002).

Additionally, whether the officers' "actions may have violated [LPD]'s policies" does not defeat qualified immunity; "the issue is whether [the officers] violated the Constitution, not whether [they] should be disciplined by the local police force." *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992). Simply put, here, internal police "policies do not determine constitutional law." *Id.* at 348; *see also, e.g.*, *Cooper v. Cnty. of Washtenaw*, 222 F. App'x 459, 470 (6th Cir. 2007); *Bradley v. City of Ferndale*, 148 F. App'x 499, 508 (6th Cir. 2005).

[21] Gover provides no reason to doubt the reliability of the field tests here used. *See also* DE #27-1, at 49 (Muravchick noting a "very low" frequency of false positives).

[22] Further, "it is clear that if [the] field tests incorrectly registered positive, this does not retroactively eliminate probable cause[.]" *Lamping*, 30 F. App'x at 580.

areas in the driver's floorboard containing suspected crack: one near the pedals, and one toward the seat (where Gover's heel would have been). *See, e.g.*, DE #26-1, at 25-26. The seat-area suspected crack, per Cobb, included the "rock," while the pedal-area suspected crack was solely "powdery." *See id.* Muravchick corroborated this. DE #27-1, at 41-42 (Q: "[W]ere both the areas connected with some residue or powder or were they two separate areas? A: Two separate areas."). Thus, the officers quite reasonably could have concluded (faced with conflicting field test results) that the two substances were distinct, but that one of them was, in fact, coke. Regardless, when one field test came back positive, "a negative test would not have eliminated probable cause. An . . . officer is not required to resolve disputed factual issues" in a probable cause milieu. *Hines v. Port Auth. of N.Y. & N.J.*, No. 94 CIV. 5109 NRB, 2000 WL 420555, at *7 n.4 (S.D.N.Y. Apr. 18, 2000);[23] *see also Warlick v. Cross*, 969 F.2d 303, 309 (7th Cir. 1992). Simply put, "a negative field test does not necessarily vitiate probable cause." *R.M.B. v. Bedford Cnty. (Va.) Sch. Bd.*, 169 F. Supp. 3d 647, 654 n.2 (W.D. Va. 2016).

Finally, to the extent Gover challenges Muravchick's post-arrest search of his (Gover's) person,[24] the search incident to arrest doctrine validates the officer's actions.

---

[23] For further elaboration of this principle, *see, e.g.*, *Wesby*, 138 S. Ct. at 592-93 ("[I]nnocent explanations—even uncontradicted ones—do not have any automatic, probable-cause-vitiating effect."); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 308 (6th Cir. 2005) ("[A] policeman is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause." (alterations removed)); *Sussman v. Dalton*, 552 F. App'x 488, 493 (6th Cir. 2014) (remarking that officers have "no duty to investigate further once probable cause was established.").

[24] Whether Gover raises such a claim is unclear. The Complaint specifically targets "an unlawful search of Plaintiff," DE #1, at ¶ 31, but does so only by complaining about "Defendants' conduct as described above." *Id.* Gover did not allege an unlawful search of his person in the preceding paragraphs.

The arrest, as the Court detailed above, was lawful[25] and supported by probable cause. "[S]earches of a person incident to a lawful arrest require 'no additional justification' beyond the establishment of probable cause for arrest." *United States v. Smith*, 549 F.3d 355, 361 (6th Cir. 2008) (quoting *United States v. Robinson*, 94 S. Ct. 467, 477 (1973)).

Per this discussion, the officers' actions in this scenario were constitutionally valid (and certainly, at a minimum, in the qualified immunity context, not clearly invalid). Accordingly, Muravchick and Cobb have immunity from Gover's claims.

## IV.    CONCLUSION

For these reasons, the Court **GRANTS** DE #24 and will enter a separate Judgment.

This the 20th day of September, 2018.

Signed By:

*Robert E. Wier*

**United States District Judge**

---

[25] "Lawful," in this context, is "shorthand for compliance with constitutional standards," not "shorthand for compliance with state law." *Moore*, 128 S. Ct. at 1607.